UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| ANDREW MICHAEL ASSUMPCAO, | |
|---|---|
| Plaintiff, | CASE NO. 3:17-CV-05857-JRC |
| v. | ORDER ON PLAINTIFF'S COMPLAINT |
| NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations, | |
| Defendant. | |

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13 (*see also* Consent to Proceed Before a United States Magistrate Judge, Dkt. 2). This matter has been fully briefed. *See* Dkts. 10, 11, 12.

Examining psychologist, Dr. Bruce Tapper, Ph.D., diagnosed plaintiff with social phobia, panic disorder, and major depressive disorder. AR. 389-93. The Administrative Law Judge ("ALJ") gave little weight to Dr. Tapper's opinion that plaintiff has marked

and severe impairments, including plaintiff's ability to perform activities within a schedule, maintain regular attendance, communicate and perform effectively in a work setting, and complete a normal work day and work week. AR. 391. However, the ALJ erred in finding that Dr. Tapper's opinion was not consistent with plaintiff's daily activities and the treatment notes. This error is not harmless, because a reasonable ALJ, when fully crediting Dr. Tapper's opinion, may have included additional limitations in the RFC, and could have reached a different disability determination.

Therefore, this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this opinion.

BACKGROUND

Plaintiff, ANDREW MICHAEL ASSUMPCAO, was born in 1988 and was 20 years old on the alleged date of disability onset of December 20, 2008. *See* AR. 172-79. Plaintiff has attended college but has no degree. AR. 34, 453. Plaintiff worked briefly as a courtesy clerk as a summer job but quit when he went to school. AR. 42

According to the ALJ, plaintiff has at least the severe impairments of "ulcerative colitis, interstitial cystitis, anxiety disorder, and affective disorder (20 CFR 404.1520(c) and 416.920(c))." AR. 433.

At the time of the hearing, plaintiff was living with his parents. AR. 41-42.

PROCEDURAL HISTORY

Plaintiff's applications for disability insurance benefits ("DIB") pursuant to 42 U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act were denied initially and

following reconsideration. *See* AR. 64, 75, 76. Plaintiff's requested hearing was held before ALJ Tom L. Morris on May 8, 2014. *See* AR. 32-63. On December 22, 2014, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act. *See* AR. 15-31. Following a stipulated remand in this Court, AR. 498-99, a second hearing was held before ALJ Morris on February 28, 2017, AR. 451-74, and a second written decision concluding plaintiff was not disabled was issued on August 19, 2017, AR. 427-50.

In plaintiff's Opening Brief, plaintiff raises the following issues: (1) did the ALJ err by improperly assessing the medical evidence; (2) did the ALJ reject plaintiff's statements without providing "clear and convincing" reasons; (3) did the ALJ err by rejecting statements provided by plaintiff's mother; (4) did the ALJ consider all of plaintiff's limitations and all of the evidence when assessing plaintiff's residual functional capacity ("RFC"). *See* Dkt. 10 at 1.

STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

# DISCUSSION

## 1. Did the ALJ err by improperly assessing the medical evidence?

Plaintiff contends that the ALJ erred in rejecting the opinion of examining psychologist, Dr. Bruce Tapper, Ph.D. Dkt. 10 at 5-8. Dr. Tapper diagnosed plaintiff with social phobia, panic disorder with agoraphobia, and major depressive disorder that is recurrent and severe. AR. 389-93. Dr. Tapper opined that plaintiff has marked impairments in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; adapt to changes in a routine work setting; and make simple work-related decisions. AR. 391. Dr. Tapper opined that plaintiff has severe impairments in his abilities to communicate and perform effectively in a work setting and complete a normal work day and work week without interruptions from psychologically based symptoms. AR. 391. Dr. Tapper opined that plaintiff's impairments would last beyond 12 months. AR. 391-92. The ALJ gave Dr. Tapper's opinion "little weight" because Dr. Tapper's "assessment of marked limitations in social functioning is inconsistent with treatment notes and the claimant's activities of daily living." AR. 441.

When an opinion from an examining or treating doctor is contradicted by other medical opinions, as it is here, the treating or examining doctor's opinion can be rejected only "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)); *see also* 20 C.F.R. §§ 404.1527(a)(2) ("Medical opinions are statements from

physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions").

As an initial matter, plaintiff argues that the ALJ erred by only addressing plaintiff's marked limitations in social functioning, and failed to address Dr. Tapper's opinion regarding plaintiff's other limitations. Dkt. 10 at 5-6. The Court does not agree. The limitations opined by Dr. Tapper's are all related to plaintiff's social functioning and Dr. Tapper based his assessment on a diagnosis of three social disorders. AR. 391. Therefore, the Court concludes that ALJ did not err in only discussing Dr. Tapper's opinion with respect to plaintiff's limitations in social functioning.

In addition, plaintiff argues that the ALJ merely repeated his prior rationale in rejecting Dr. Tapper's opinion on remand and failed to follow orders from this Court or the Appeals Council. Dkt. 10 at 7. However, the Court again disagrees. *See* Dkt. 10 at 7. In his prior decision, although the ALJ relied on similar reasoning with respect to inconsistency with the treatment notes and plaintiff's daily activities, the ALJ also rejected Dr. Tapper's opinion based on Dr. Tapper's reliance on plaintiff's subjective complaints. AR. 25. The Appeals Council held that further consideration of Dr. Tapper's opinion was necessary based on the deficiencies in the ALJ's evaluation of plaintiff's subjective symptom testimony. AR. 506. The ALJ's current decision does not rely on such rationale. AR. 441.

In rejecting Dr. Tapper's opinion, the ALJ found that Dr. Tapper's opinion was inconsistent with the record which indicated that plaintiff's anxiety improved with medication and mental health treatment, that plaintiff was stable even once he stopped mental health treatment, and that mental status examinations throughout the relevant period indicate intact cognitive functioning. AR. 439-41.

An inconsistency between treatment records and an opinion may serve as a valid reason to discount the opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). However, periods of improvement are not inconsistent with findings that mental illness limits functioning. The Ninth Circuit has repeatedly cautioned that it is error to reject a physician's opinion merely because symptoms wax and wane in the course of treatment. "Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 759 F.3d 995, 1017–18 (9th Cir. 2014) (citing *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("[The treating physician's] statements must be read in context of the overall diagnostic picture he draws. That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace."); *See Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1200–01 (9th Cir. 2008).

Here, the ALJ disregarded these principles when he found that Dr. Tapper's opinion deserved little weight in light of plaintiff's periodic improvements and

responsiveness to medication. The references that plaintiff's anxiety and depression were improving are not sufficient to undermine the repeated diagnosis of those conditions, or Dr. Tapper's opinion that plaintiff has marked and severe impairments in his ability to perform activities within a schedule, maintain regular attendance, adapt to changes in a routine work setting, make simple work-related decisions, communicate and perform effectively in a work setting, and complete a normal work day and work week. *See e.g.* AR. 390, 441, 618, 624, 681. Although plaintiff did report some improvement in response to medication, he continued to struggle with anxiety, AR. 373, 630, reported on several occasions that he continued to feel like a failure and depressed, and that his mood slips as the season changes, AR. 380, 409. Moreover, simply because plaintiff was doing well for the purpose of a treatment program does not necessarily indicate that he is able to work nor does it bear a direct relation on plaintiff's work-related functional capacity. *See Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001).

The ALJ also noted that plaintiff's mental status examinations throughout the relevant period indicate intact cognitive functioning. AR. 439-41 (citing AR. 405, 675-683). However, this finding is not supported by substantial evidence. For example, Dr. Russell Bragg, Ph.D. conducted a mental status examination and found that several areas of plaintiff's cognitive functioning were impaired including plaintiff's perception, memory and concentration. AR. 678 (perception was not within normal limits, insight/judgment were impaired, partially impaired performance on memory tests, and impaired performance on one portion of the concentration test, and borderline performance on another portion). Moreover, impairments in social functioning, which

include limitations such as communicating effectively at work due to anxiety, are inherently different and distinct from cognitive functioning impairments. Therefore, even if plaintiff's cognitive functioning was intact, this would not necessarily be inconsistent with impairments in social functioning.

In sum, the Court concludes the ALJ's first reason for rejecting Dr. Tapper's opinion is not specific and legitimate or supported by substantial evidence.

Next, the ALJ found that plaintiff's activities of daily living contradicted Dr. Tapper's opinion. AR. 441. The ALJ referenced plaintiff's ability to volunteer regularly during group therapy sessions, volunteer to lead therapy groups, ask a woman out on a date, stand up for a friend (during a fight), and work out at a gym. AR. 441.

A medical opinion's consistency with the plaintiff's activities of daily living is a specific and legitimate reason to discount the opinion in certain circumstances. *See Morgan*, 169 F.3d at 600-02. However, none of the activities cited by the ALJ establish that plaintiff could perform basic work activities on a regular and continuing basis in a work setting. *See Smolen v. Chater*, 80 F.3d 1273, 1287 n. 7 (9th Cir. 1996 ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication.").

Specifically, plaintiff's ability to volunteer during group therapy sessions merely demonstrates that plaintiff was complying with treatment. Dkt. 10 at 7; AR. 349, 373, 376-77, 441. This is not substantial evidence to support the ALJ's finding and does not show that plaintiff demonstrated the required mental abilities and social skills to obtain

and maintain employment. With respect to plaintiff's ability to go to the gym, the ALJ failed to cite to any evidence explaining in detail what plaintiff does at the gym or how often plaintiff goes to the gym or how this may be relevant to maintaining employment. *See* AR. 441. Plaintiff testified that he "occasionally go[es] down to the gym down the street from where [he] live[s] and walk[s] on a treadmill or something for a little while, just to move around." AR. 56. This evidence does not indicate that plaintiff's ability to go to the gym comprised a substantial portion of his day, or that it was transferable to a work environment, and therefore, is not substantial evidence to support the ALJ's finding. *Ghanim v. Colvin*, 763 F.3d 1154, 1161-62, 1165 (9th Cir. 2014).

With respect to plaintiff's ability to ask a woman out on a date, and that plaintiff stood up for a friend during a fight, AR. 441, the evidence shows that these were one time occurrences. AR. 371-72. There is no evidence in the record that plaintiff did so on a regular basis or that he could perform such activities as a part of a job requirement. In fact, the Court cannot imagine that these "skills" are at all relevant to maintaining employment. The ALJ's decision cannot be affirmed "simply by isolating a specific quantum of supporting evidence." *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989) (internal quotation marks and citations omitted). Thus, this is not substantial evidence to support the ALJ's finding.

In sum, the Court concludes the ALJ's second reason for rejecting Dr. Tapper's opinion is not specific and legitimate or supported by substantial evidence. *See Popa v. Berryhill*, 872 F.3d 901, 906 (9th Cir. 2017) (finding the ALJ erred when he failed to explain why the claimant's daily activities were inconsistent with the doctor's opinion).

The undersigned concludes that the ALJ erred when he gave little weight to Dr. Tapper's opinion. The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)). The Ninth Circuit has reaffirmed the explanation in *Stout* that "ALJ errors in social security are harmless if they are 'inconsequential to the ultimate nondisability determination' and that 'a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'" *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (citing *Stout,* 454 F.3d at 1055-56). In *Marsh,* even though "the district court gave persuasive reasons to determine harmlessness," the Ninth Circuit reversed and remanded for further administrative proceedings, noting that "the decision on disability rests with the ALJ and the Commissioner of the Social Security Administration in the first instance, not with a district court." *Id.* (citing 20 C.F.R. § 404.1527(d)(1)-(3)).

A reasonable ALJ, fully crediting Dr. Tapper's opinion, may have included additional limitations in the RFC, which could have resulted in a different ultimate disability determination. For example, Dr. Tapper opined that plaintiff had marked impairments in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; adapt to changes in a routine work setting; and make simple work-related decisions. AR 391. Dr. Tapper also opined that plaintiff had severe impairments in his abilities to

communicate and perform effectively in a work setting and complete a normal work day and work week without interruptions. AR. 391. The RFC did not contain these limitations. AR. 434-35. As fully crediting these opinions may alter the ultimate disability determination, the Court cannot conclude with confidence "'that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'" *See Marsh*, 792 F.3d at 1173 (citing *Stout,* 454 F.3d at 1055-56). Therefore, the ALJ's error is not harmless, and the Court concludes that this case should be remanded for further consideration of Dr. Tapper's opinion.

Regarding challenges to the ALJ's evaluation of other medical opinions, because the Court concludes that the ALJ erred in his assessment of Dr. Tapper's opinion and that this case be remanded for further administrative proceedings, the remaining medical evidence must be evaluated anew following remand of this matter.

**2. Whether the ALJ properly evaluated plaintiff's testimony, the lay evidence, and plaintiff's RFC.**

Because the Court concludes that the ALJ erred when evaluating the medical opinion evidence of Dr. Tapper, and that this case be remanded for further administrative proceedings, plaintiff's testimony, the lay evidence, and plaintiff's RFC must be evaluated anew following remand of this matter.

**3. Is remand for a finding of disability the proper remedy in this case?**

Plaintiff seeks remand for an award of benefits, or in the alternative, remand for further proceedings. Dkt. 10 at 18-19. Generally, when the Social Security Administration does not determine a claimant's application properly, "'the proper course,

except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit has put forth a "test for determining when [improperly rejected] evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).

At the first step, the court should determine if "the ALJ has failed to provide legally sufficient reasons for rejecting [the particular] evidence." *Smolen, supra*, 80 F.3d at 1292 (citations omitted). Next, as stated recently by the Ninth Circuit:

> Second, we turn to the question whether further administrative proceedings would be useful. In evaluating this issue, we consider whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether the claimant's entitlement to benefits is clear under the applicable legal rules.

*Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (citations omitted).

Here, there are conflicts in the medical opinion evidence. For example, Dr. Tapper's opinion is contradicted by the opinion of Dr. James Bailey Ph.D, who found limitations but did not preclude plaintiff from full time work. *See* AR. 65-74 (Dr. Bailey's opinion); AR. 389-393 (Dr. Tapper's opinion). Therefore, issues remain in this case warranting remand for further administrative proceedings. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014) (citations omitted) (reversal with a direction to award benefits is inappropriate if further administrative proceedings would serve a useful purpose); *See Kail v. Heckler,* 722 F.2d 1496, 1497 (9th Cir. 1984)

(remand proper where additional administrative proceedings that would include "additional medical opinions regarding claimant's residual functional capacity" could remedy defects). The ALJ is responsible for resolving ambiguities and conflicts in the medical evidence. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Therefore, for all of the stated reasons and based on the record, the undersigned orders that this matter be reversed and remanded for further administrative proceedings.

## CONCLUSION

Based on these reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration consistent with this order.

**JUDGMENT** should be for plaintiff and the case should be closed.

Dated this 20th day of June, 2018.

J. Richard Creatura
United States Magistrate Judge